# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-1946

_____

Southeast Arkansas Hospice, Inc.

*Plaintiff - Appellant*

v.

Sylvia Burwell, Department of Health and Human Services

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Helena

_____

Submitted: January 14, 2016
Filed: March 10, 2016

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Southeast Arkansas Hospice, Inc. (SEARK) operates two hospice-care facilities. SEARK voluntarily entered into a provider agreement with the Secretary of Health and Human Services to receive Medicare reimbursement. *See* **42 U.S.C. §§ 1395c**, **1395f(a)(7)**, **1395cc**. SEARK agreed "to conform to the provisions of section 1866 of the Social Security Act and applicable provisions in 42 CFR." The Act annually caps Medicare reimbursement. **§ 1395f(i)(2)(A)**. Any payment above

the statutory cap must be refunded to the Medicare program. *See* **42 C.F.R. § 418.308(d)**. After notice, a provider may terminate its agreement with the Secretary. **42 U.S.C. § 1395cc(b)(1)**. As a provider, SEARK can discharge a hospice patient if the patient moves out of the service area, is no longer terminally ill, or becomes so disruptive as to interfere with SEARK's ability to provide care. **42 C.F.R § 418.26(a)**. However, SEARK cannot "discontinue the hospice care it provides with respect to a patient because of the inability of the patient to pay for such care." **42 U.S.C. § 1395x(dd)(2)(D)**.

Invoking the reimbursement cap, the Secretary sent SEARK seven demands for repayment. SEARK sued, arguing the cap violates the Takings Clause of the Fifth Amendment. On a motion for summary judgment, the district court[1] concluded SEARK's voluntary participation in the Medicare program precludes a takings claim. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

This court reviews de novo the grant of summary judgment. ***Torgerson v. City of Rochester***, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). The Fifth Amendment prohibits the taking of private property "for public use, without just compensation." "[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." ***Pennsylvania Coal Co. v. Mahon***, 260 U.S. 393, 415 (1922). The Supreme Court considers three factors to distinguish regulation from a regulatory taking: "the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations." ***Ruckelshaus v. Monsanto Co.***, 467 U.S. 986, 1006 (1984), *quoting* ***PruneYard Shopping Center v. Robins***, 447 U.S. 74, 83 (1980).

---

[1] The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

SEARK has not met its burden to prove the demands for repayment based on the statutory cap are a taking. First, the reimbursement cap allocates the government's capacity to subsidize healthcare. *See* **H.R. Rep. 98-333**, at 1 (1983), *reprinted in* 1983 U.S.C.C.A.N. 1043, 1043-44 ("The intent of the cap was to ensure that payments for hospice care would not exceed what would have been expended by Medicare if the patient had been treated in a conventional setting."). Second, SEARK presented no evidence to suggest the cap makes it impossible "to profitably engage in their business." ***Keystone Bituminous Coal Ass'n v. DeBenedictis***, 480 U.S. 470, 485 (1987). *See also **Minnesota Ass'n of Health Care Facilities, Inc. v. Minnesota Dep't of Public Welfare***, 742 F.2d 442, 446 (8th Cir. 1984) (rejecting an argument that "business realities" prevent a nursing home from leaving the Medicaid program).

Third, SEARK voluntarily chose to participate in the Medicare hospice program. "This voluntariness forecloses the possibility that the statute could result in an imposed taking of private property which would give rise to the constitutional right of just compensation. . . ." ***Minnesota Ass'n of Health Care Facilities, Inc.***, 742 F.2d at 446. *Compare **Ruckelshaus***, 467 U.S. at 1007 ("[A]s long as Monsanto is aware of the conditions under which the data are submitted, and the conditions are rationally related to a legitimate Government interest, a voluntary submission of data by an applicant in exchange for the economic advantages of a registration can hardly be called a taking."), *with **Horne v. Dep't of Agriculture***, 135 S. Ct. 2419, 2430 (2015) ("The taking here cannot reasonably be characterized as part of a similar voluntary exchange.").

* * * * * * *

The judgment is affirmed.

_____